IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| MARCUS COLLIER, #518500, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:25-cv-00568 |
| | ) | |
| DEANDRE CODER, et al., | ) | JUDGE RICHARDSON |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Pro se plaintiff Marcus Collier, a state inmate in custody at the Riverbend Maximum Security Institution (RMSI), filed an Amended Complaint under 42 U.S.C. § 1983 (Doc. No. 9), an application for leave to proceed in forma pauperis (IFP) (Doc. No. 10), a Motion for Appointment of Counsel (Doc. No. 11), and two Motions to Ascertain Status. (Doc. Nos. 12, 14.)

This case is before the Court for ruling on Plaintiff's IFP application and Motions, and for initial review under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

## I. PAUPER STATUS

Subject to certain statutory requirements, *see* 28 U.S.C. § 1915(a)(1)–(2), (g), a prisoner bringing a civil action may be permitted to proceed as a pauper, without prepaying the $405 filing fee. Because Plaintiff's IFP application complies with the applicable statutory requirements and demonstrates that he lacks the funds to pay the entire filing fee, the IFP application (Doc. No. 10) is **GRANTED**.

Nevertheless, prisoners bringing civil lawsuits or appeals are "required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). Where the prisoner proceeds IFP, the fee is $350

instead of $405, *see id.* § 1914(a)–(b) & Dist. Ct. Misc. Fee Schedule, provision 14 (eff. Dec. 1, 2023), and may be paid in installments over time via an assessment against his inmate trust account. 28 U.S.C. § 1915(b)(1)–(2).

Accordingly, Plaintiff is **ASSESSED** a $350 filing fee. The fee will be collected in installments as described below.

The warden of the facility in which Plaintiff is currently housed, as custodian of his trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility in which Plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## II. INITIAL REVIEW

### A. Legal Standard

In cases filed by prisoners, the Court must conduct an initial screening and dismiss the

Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). Review under the same criteria is also authorized under 28 U.S.C. § 1915(e)(2) when the prisoner proceeds IFP.

To determine whether the Complaint states a claim upon which relief may be granted, the Court reviews for whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A viable claim is stated under 42 U.S.C. § 1983 if the Complaint plausibly alleges (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The Court must afford the pro se Complaint a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to Plaintiff. *Inner City*, *supra*.

**B. Factual Allegations**

On May 29, 2024, when he was incarcerated at the DeBerry Special Needs Facility in Nashville, Plaintiff was handcuffed and escorted from his cell by correctional officers Deandre Carter[1] and Joshua Gather. (Doc. No. 9 at 3.) During this process, Plaintiff "stated to officer

---

[1] This Defendant is identified as Deandre "Coder" in the original Complaint (Doc. No. 1) and in various places in the Amended Complaint (Doc. No. 9 at 2, 5, 7) and summons attached thereto. (Doc. No. 9-1 at

Deandre Carter 'you're a bitch ass nigga for what you did when you gave me a tray full of water.'" (*Id.*) "[B]oth officers tightened up their cuffs a little bit," and when the escort reached the hallway, Plaintiff "stopped, turned around and told officer Carter 'I'll spit in your face[.]'" (*Id.*) Plaintiff then "jumped at" Carter, at which point Defendants tightened Plaintiff's handcuffs and "threw [his] face up against the corner." (*Id.*) One of them punched Plaintiff in the ribs, and Plaintiff "screamed for help as soon as [they] got in Delta pod," at which point Plaintiff refused to go any further until he had "seen somebody in charge." (*Id.*) Defendants "slammed" Plaintiff to the ground and jumped on top of him, and Plaintiff "tossed and turned so they could get off of me." (*Id.*) Carter punched Plaintiff twice in the mouth and "stated 'Bitch, do you give up[?]'" (*Id.*) Defendants then picked Plaintiff up and carried him to his cell, where Carter punched him one more time in the mouth. (*Id.*) Plaintiff was seen by a nurse after this altercation, for injuries to both wrists, both shoulders, and his upper lip. (*Id.*) He states that Carter and Gather were combative before "assaulting" him. (*Id.*) Plaintiff subsequently filed a grievance, but "nothing was done," except that Plaintiff was charged with the disciplinary offense of assault on staff. (*Id.*)

Plaintiff sues Carter, Gather, and the Tennessee Department of Correction (TDOC). (*Id.* at 2.) As relief, Plaintiff seeks the dismissal of his assault-on-staff charge and an award of damages. (*Id.* at 3–4.) He also requests "that no more unlawful retaliation be committed against [him]," citing an occasion in December of 2024 when he was made to walk "in handcuffs and shackles out in the cold with no shoes, socks, pants, or anything else besides a small T-shirt" and was then left in a cell for some undefined period of time without a shower or a mattress. (*Id.* at 4.)

---

1, 3.). But in the Amended Complaint's caption, factual allegations, and demand for relief (Doc. No. 9 at 1, 3–4), the last name is stated instead as "Carter"; in these places, it appears that perhaps Plaintiff is attempting to correct the original Complaint's seeming misidentification of this Defendant's last name (as Coder), but it is Plaintiff who must finally clarify the matter of this Defendant's last name when preparing the summons for this Defendant. To the extent that Plaintiff does not clarify this, there may be negative consequences to Plaintiff in the prosecuting of his claims.

## C. Analysis

The Court liberally construes the Amended Complaint to assert a claim of excessive force. The Eighth Amendment's Cruel and Unusual Punishments Clause prohibits the use of excessive force against convicted prisoners. The force used against a prisoner is excessive if it is "grossly disproportionate to the offense committed by the prisoner" or if it "represents an 'unnecessary and wanton infliction of pain.'" *Butler v. Trett*, No. 619CV00187GFVTEBA, 2021 WL 5218537, at *4 (E.D. Ky. July 15, 2021), *report and recommendation adopted*, 2021 WL 3913570 (E.D. Ky. Sept. 1, 2021) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). The "core judicial inquiry" in considering such a claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

There is an objective component to Eighth Amendment excessive-force claims, which requires the pain inflicted to be sufficiently serious. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)). However, the Court may not apply a "de minimis injury" test to such claims, as "the judicial inquiry should focus on 'the nature of the force rather than the extent of the injury.'" *Williams*, 631 F.3d at 384 (quoting *Wilkins*, 559 U.S. at 34). For purposes of initial review, the Amended Complaint sufficiently alleges that the force used against Plaintiff and the injuries he sustained were serious enough to plausibly claim a right to relief.

As to whether the force was applied in subjective good faith, the Amended Complaint alleges, in no uncertain terms, that Plaintiff initiated the physical altercation with Defendants

(without being provoked) by insulting Carter and then stopping, turning to face Defendants, threatening to spit in Carter's face, and then jumping at Carter. Presuming the truth of these allegations, Defendants were clearly presented with an immediate need to maintain or restore discipline. They appear to have faced this need again when they arrived at Delta pod and Plaintiff refused to go any further, and then when he resisted their efforts to control him on the ground.

However, the Court cannot determine at this point whether all of Defendants' alleged actions in response to Plaintiff's unruliness were taken in good faith, or whether some were taken for the purpose of causing harm. When determining if particular applications of force were wanton and unnecessary, courts may consider the extent of injury suffered by an inmate, along with other factors including "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Butler*, 2021 WL 5218537, at *4 (quoting *Hudson*, 503 U.S. at 7). To enable this determination, Plaintiff's excessive-force claim against Defendants Carter and Gather must proceed for further development of the relevant facts.

TDOC, however, will be dismissed from this action. TDOC is a state agency and, as such, is an arm of the state not properly sued in its own name under Section 1983. *Padgett v. TDOC*, No. 2:21-CV-59-DCLC-CRW, 2021 WL 1112784, at *3 (E.D. Tenn. Mar. 23, 2021) (citing *Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006) (finding that TDOC is equivalent to "the State" and therefore "is not a 'person' within the meaning of § 1983")).

Finally, the Court notes that Plaintiff's request for dismissal of his disciplinary charge for assault on staff—based on his assertion that "it was [Plaintiff] that was the party assaulted by the officers" (Doc. No. 9 at 3)—is not available relief under Section 1983. *See Mujihad v. Harrison*, 172 F.3d 49 (Table), 1998 WL 940243, at *2 (6th Cir. 1998) (finding that "the filing of false

disciplinary charges against an inmate does not constitute a constitutional violation redressable pursuant to § 1983").[2] Moreover, Plaintiff fails to assert any viable claim by alleging in his request for relief that, six months after the claimed excessive use of force that is the gravamen of his Amended Complaint, unidentified officers who are not defendants made him walk in shackles through cold conditions while underdressed and left him in a cell without providing a shower or mattress. (Doc. No. 9 at 4.)

### III. CONCLUSION

As explained above, the Amended Complaint's claim to damages for excessive force under the Eighth Amendment will be allowed to proceed against Defendants Carter and Gather.[3] The Clerk is **DIRECTED** to strike the name "Joshua Actner" from the electronic docket's listing of defendants, as this misspelling of Defendant Gather's name was corrected in the Amended Complaint. Defendant TDOC is **DISMISSED** from this action.

With the case still in the pleading stage, Plaintiff's Motion for Appointment of Counsel (Doc. No. 11) is **DENIED** as premature, without prejudice to renewal at a later date after service of process is accomplished. In view of this Order's description of the status of this case, Plaintiff's Motions to Ascertain Status (Doc. Nos. 12, 14) are **GRANTED**.

---

[2] If Plaintiff was ultimately convicted of assault on staff, and if a successful claim to damages for excessive force would necessarily imply the invalidity of that disciplinary conviction and punishment, then any such damages claim would not be cognizable under Section 1983 unless the disciplinary conviction were first overturned. *Mujihad*, at *2; *see also Gunn v. Civic*, No. 1:24-cv-00073, 2025 WL 350242, at *3 (M.D. Tenn. Jan. 30, 2025), *appeal dismissed sub nom. Gunn v. Corecivic, Inc.*, No. 25-5182, 2025 WL 4483509 (6th Cir. Sept. 4, 2025) (citing *Edwards v. Balisok*, 520 U.S. 641, 646, 648 (1997)). However, "[t]he mere fact that the conviction and the § 1983 claim arise from the same set of facts is irrelevant if the two are consistent with one another," *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010), as may well be the case here.

[3] The Court's determination that the Amended Complaint states a colorable claim for purposes of this initial screening does not preclude any Defendant from filing a motion to dismiss under Federal Rule of Civil Procedure 12.

The Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons (AO 440) and USM 285 form) for each of the remaining two Defendants. Plaintiff **MUST** complete the service packets and return them to the Clerk's Office within **30 DAYS** of this Order's entry on the docket. Failure to do so may result in the dismissal of this case. Upon return of the properly completed service packets, the Clerk is **DIRECTED** to issue summons to the U.S. Marshals Service for service on the defendants. Fed. R. Civ. P. 4(b) and (c)(3).

This action is **REFERRED** to the Magistrate Judge to oversee service of process, to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

IT IS SO ORDERED.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE